*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2012-187

SEPTEMBER TERM, 2012

| | |
|---|---|
| In re E.C., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Rutland Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 231-12-07 Rdjv |

Trial Judge: Nancy S. Corsones

In the above-entitled cause, the Clerk will enter:

Mother appeals termination of her rights to E.C., born in September 1996. On appeal, mother argues that the court failed to construct a permanency arrangement for E.C. and improperly "doomed" E.C. to long-term foster care. We affirm.

E.C., born in 1996, is the eldest of mother's five children. All five children were placed in the custody of the Department for Children and Families (DCF) in December 2007 and ultimately declared children in need of care or supervision (CHINS) based on mother's failure to protect them from domestic violence. The children's father subjected mother to serious physical abuse. In 2007, mother left father and began a relationship with another man who also physically and verbally abused her and the children. Initially, all five children were placed in foster care together. After a report that E.C. had sexually abused some of the younger children, she was placed in a separate foster home in January 2008, where she has remained. Due to the trauma E.C. experienced she has been diagnosed with post-traumatic stress disorder and an adjustment disorder, and has exhibited sexually reactive behaviors.

In March 2009, DCF filed to terminate parental rights. After a six-day hearing, the court terminated father's rights but denied termination as to mother, concluding that the State had not proven that mother's progress had stagnated or that termination was in the children's best interests. Following that decision, DCF set specific requirements for mother, including understanding her children's needs, accepting responsibility for the trauma the children endured, working with a mental health counselor, avoiding violent relationships and completing anger management. In November 2010, E.C. observed mother with her former boyfriend, who had been physically abusive to mother and some of the children, and with whom mother was not supposed to associate. After that, E.C. "gave up hope that her mother would do what was necessary to get her back," and refused to have contact with mother. With the support of E.C.'s therapist, DCF suspended visits with mother.

In June 2011, DCF filed a new motion to terminate mother's parental rights. A forensic family evaluation was performed in advance of a hearing. The doctor who performed the evaluation found that E.C. is emotionally fragile and at risk for self harm. The court found credible the doctor's determination that the most important factor for E.C. is "her ability to trust and rely on the consistency of her foster mother." The court found that this attachment is critical for E.C. and a disruption could put E.C. at greater risk for self harm or unhealthy conduct, such as drinking or drug use.

A contested hearing was held December 2011. While the case was under consideration, DCF moved to reopen the case as to E.C. because some issues had arisen regarding E.C.'s behavior.[1] The court granted the motion and held an additional hearing in March 2012. At that hearing, it was revealed that E.C. had run away from her foster home. She was quickly located. She was going through an emotional crisis. She was treated in a hospital and treatment program, and then returned to her foster mother. Since then, she has improved in her school performance and in communicating more openly with her foster mother.

In May 2012, the court granted the petition, concluding that termination was in E.C.'s best interests. The court concluded that there was a change of circumstances based on mother's lack of progress. In evaluating E.C.'s best interests, the court found that mother would not be able to resume parenting within a reasonable period of time. E.C. had not visited with mother since November 2010, and remained adamantly opposed to contact with mother. The court emphasized that E.C. needs permanency and noted E.C.'s foster mother wants to adopt E.C. if E.C. is willing.

On appeal, mother does not challenge the court's findings or conclusions regarding mother's lack of progress or E.C.'s best interests. Mother argues instead that the court's decision is error because the court did not explicitly provide for a permanent arrangement for E.C. and has effectively doomed E.C. to the limbo of long-term foster care. Mother contends that termination will not result in a permanent situation for E.C. because while E.C.'s foster mother wants to adopt E.C., E.C. has not always been consistent in her opinion of a proposed adoption.

There is no support for mother's argument that the lack of a permanency plan bars termination of mother's parental rights. While we recognize that a permanent, stable placement is generally in a child's best interests, and that long-term foster care is not the ideal outcome, when considering the best interests of the child, the family court is not required to find that adoption will follow termination. See In re E.B., 158 Vt. 8, 15 (1992). This is because "termination of residual parental rights does not depend on the existence of an alternative placement." Id.

Guided by the statutory best-interest factors, the court reflected on E.C.'s present situation in evaluating E.C.'s best interests, including E.C.'s relationship to her foster mother and adjustment to her home, school, and community. See 33 V.S.A. § 5114(a)(1), (2). In this regard,

---

[1] The court granted the request as to the four younger children in January 2012. Mother appealed that decision, and this Court affirmed. In re K.C., No. 2012-042 (Vt. Jul. 11, 2012) (3-Justice mem.).

the court recognized that E.C.'s attachment to her foster mother was critical, and that E.C.'s foster mother was committed to adopting E.C. if that was possible. Whether an adoption actually occurs, however, was not a factor for the court to consider at termination.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice

_____
Beth Robinson, Associate Justice